UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ERIC LEROY BOLTON                                    CIVIL ACTION

VERSUS                                               NUMBER: 23-7339

WARREN MONTGOMERY                                    SECTION: "M" (5)

ORDER

Before the Court is a Motion to Dismiss for Lack of Subject Matter Jurisdiction (rec. doc. 39) filed by Defendant Louisiana Department of Public Safety and Corrections, Public Safety Services, Office of State Police ("LSP"). Plaintiff has filed an opposition (rec. doc. 44), and the LSP has filed a reply. (Rec. doc. 46). Having reviewed the pleadings and the case law, the Court rules as follows.[1]

I.    Background

On habeas review, this Court outlined the procedural posture of Plaintiff's underlying criminal convictions:

Petitioner, Eric L. Bolton, is a state prisoner incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. On June 23, 2010, he was convicted of attempted manslaughter, second degree robbery, and second degree kidnapping under Louisiana law. On August 2, 2010, he pleaded guilty to being a fourth offender, and he was sentenced as such on the attempted manslaughter conviction to a term of life imprisonment without benefit of probation, parole, or suspension of sentence. On that same date, he was also sentenced to terms of forty years imprisonment on each of the two remaining convictions. It was ordered that all of the sentences be served concurrently. On September 14, 2011, the Louisiana First Circuit Court of Appeal affirmed his convictions, habitual offender adjudication, and sentences. The Louisiana Supreme Court then denied his related writ application on February 10, 2012.

On or about March 12, 2012, petitioner filed an application for post-conviction relief with the state district court. That application was denied on July 25, 2012. His related writ applications were likewise denied by the

_____

[1] The parties consented to proceed before the undersigned on August 16, 2024. (Rec. doc. 27).

Louisiana First Circuit Court of Appeal on November 21, 2012, and by the
Louisiana Supreme Court on May 3, 2013.

On or about May 28, 2013, petitioner filed the instant federal
application for habeas corpus relief.

*Bolton v. Cain*, No. CIV. A. 13-4572, 2014 WL 432943, at *1 (E.D. La. Feb. 4, 2014) (footnotes

omitted).  This Court ultimately denied habeas relief.  *See id.* at *24.

On direct appeal, the Louisiana First Circuit Court of Appeal summarized the facts

surrounding Plaintiff's underlying crimes as follows:

Sometime in 2009, Louise Mayeaux befriended the defendant after meeting
him in a church prayer group in Avoyelles Parish where she was a guest
speaker.  They spoke on the telephone regularly.  From conversations with
the defendant, Ms. Mayeaux believed that he was at times homeless and
unemployed.  At some point, the defendant asked her for financial assistance,
and she attempted to help him on numerous occasions over a period of
months because she believed it was her Christian duty.  On one occasion, she
enlisted the aid of her daughter and son-in-law, Melissa and Kevin Deterres,
to provide a deposit and two months rent for a trailer for the defendant to
live in.  When the defendant lost occupancy of the trailer after several
months, Ms. Mayeaux allowed him to stay at her home in Simmesport,
Louisiana for a brief period of time.  On other occasions when the defendant
obtained employment working offshore, Ms. Mayeaux drove him to his
pickup location.  At some point in November 2009, Ms. Mayeaux and the
Deterreses decided to give the defendant a used vehicle, because they
believed his lack of transportation hindered his ability to maintain steady
employment.  In exchange, the defendant was to perform odd jobs around
the Deterreses' home in Mandeville, Louisiana.

In addition to performing this work, the defendant was also invited to
join the family for Thanksgiving Day.  Accordingly, Ms. Mayeaux and the
defendant left Simmesport on November 12, 2009, intending to travel to a
part-time residence Ms. Mayeaux maintained in Covington, Louisiana.  Ms.
Mayeaux was to spend the weekend there, before returning to work in
Simmesport.  The defendant was to remain at Ms. Mayeaux's Covington
house while he was performing the work for the Deterreses.  However, en
route to Covington, the defendant requested that Ms. Mayeaux drop him off
at a friend's house in Baton Rouge.  It was understood that he would later
find his own way to her house in Covington.

At approximately 11:00 to 11:30 p.m. that evening, the defendant
telephoned Ms. Mayeaux and requested that she pick him up from a
restaurant in Hammond, which she agreed to do.  As they were arriving back
at the Covington residence sometime after midnight, Ms. Mayeaux told the
defendant that her ex-husband was upset about the family inviting the

defendant over for Thanksgiving Day.  Her ex-husband was concerned that they did not know anything about the defendant and that he might steal from or harm them.  The defendant merely responded, "Is that so?"

However, upon walking through the door into the house, Ms. Mayeaux felt a hard blow to her face and fell to the floor.  The defendant stood over her, telling her not to move or talk.  He struck her again and she "blacked out" for a time.  After she regained consciousness lying in a pool of blood, she requested medical assistance to no avail.  The defendant told her that he was going to kill her and then kill himself.  He pulled a small vial from his pocket, told her it was for crack cocaine, and that he was an addict who was unable to overcome his addiction.  At one point, the defendant grabbed her from behind and twisted her neck back and forth as though he was trying to break it.

Ms. Mayeaux continued talking to the defendant, pleading with him not to kill her.  Ultimately, he told her that he would tie her up instead so that he would have time to escape.  He then tied her legs together and her arms behind her back using a telephone cord and the cord from an electric iron. Before leaving, the defendant took money from Ms. Mayeaux's wallet and demanded the keys to her car.  She asked him not to take her car as it was her only means of transportation.  He told her that he would leave the car on North Rampart Street in New Orleans and that he would call 911 for her when he got there.

After the defendant left, a substantial period of time elapsed before Ms. Mayeaux freed herself.  The first thing she did was attempt to call the defendant on his cellular phone, but he did not answer.  She explained that she wanted to ask the defendant "not to kill himself because I knew his soul was important to God . . . ."  At approximately 4:00 a.m., she called the Deterreses' house and told her son-in-law that the defendant had attacked her.  He responded by calling 911.

Ms. Mayeaux was initially taken to Lakeview Regional Medical Center where it was discovered that she had sustained serious facial trauma, two lacerations on her face requiring stitches, and "fairly significant" brain trauma that resulted in a blood clot on the outside of the brain. As a result of the potentially life-threatening brain injury, she was transferred to Ochsner Hospital in New Orleans.  When she was released, she convalesced at her daughter's house for several weeks.  She was finally able to return to work sometime in January, 2010.

The defendant was apprehended in Baton Rouge several days after the attack.  Shortly thereafter, Ms. Mayeaux's car was recovered in the parking lot of a business located in Baton Rouge.

*State v. Bolton*, No. 2011 KA 0329, 2011 WL 4448170, at *1-3 (La. Ct. App. 2011).

Now, in his civil Complaint filed in this Court, Plaintiff alleges that "Warren

Montgomery and the state courts have misconstrued the statute of La. C. Cr. P. Art. 926.3

and their refusal to allow Mr. Bolton access to biological evidence for purposes of forensic DNA testing violates Mr. Bolton's [F]ourteenth Amendment right to due process."[2]   (Rec. doc. 3 at 4).  It appears that when the police recovered Mayeaux's car, they discovered a towel covered in blood under the passenger seat.  (Rec. doc. 3-2 at 10).  The state court allowed Plaintiff to independently test the blood, and Plaintiff maintains that the testing of the blood excludes his and Mayeaux's presence in her car.  (*Id.* at 9).  He argues that the blood must belong to Mayeaux's ex-husband or "the black guy that was with him that night. . . ." (*Id.*).

Subsequently, Plaintiff petitioned the state court to upload the test results into the Combined DNA Index System ("CODIS") and the state DNA database.  (Rec. doc. 3 at 4). Construing Louisiana Code of Criminal Procedure 926.3, the state court judge reasoned that he had no authority to order the uploading of test results into those databases.  (*Id.*).  In this lawsuit under 42 U.S.C. § 1983, Plaintiff now asks this Court to order the state court and/or the appropriate state officials to do so.

## II.    Standard of Review

"Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims."  *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012).  Under Federal Rule of Civil Procedure 12(b)(1), "a claim is 'properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate' the claim."  *Id.* (citation omitted).  Courts are to consider a Rule 12(b)(1) jurisdictional argument before addressing

---

[2] Warren Montgomery was the former District Attorney for St. Tammany Parish.  J. Collin Sims has since replaced Montgomery and has been substituted as the proper Defendant in this lawsuit.  (Rec. doc. 13).

any other arguments on the merits. *Id.* (citing *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).

When ruling on a Rule 12(b)(1) motion, a court may dismiss an action for lack of subject matter jurisdiction "on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Spotts v. United States*, 613 F.3d 559, 565-66 (5th Cir. 2010) (quoting *St. Tammany Par. ex rel. Davis v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307, 315 (5th Cir. 2009)). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming*, 281 F.3d at 161. When a court determines that it does not have subject matter over an action, the action is dismissed without prejudice. *See, e.g., id.; Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977).

## III.    Law and Analysis

The LSP moves for dismissal under the Eleventh Amendment to the Constitution, which bars all suits for monetary and injunctive relief brought in federal court against a state or state agency unless the state has consented to suit. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974) (citing *Hans v. Louisiana*, 134 U.S. 1, 13-16 (1890)); *Cozzo v. Tangipahoa Par. Council-President Gov't*, 279 F.3d 273, 280-81 (5th Cir. 2002); *Yul Chu v. Miss. State Univ.*, 901 F. Supp. 2d 761, 773 (N.D. Miss. 2012), aff'd, 592 F. App'x 260 (5th Cir. 2014) ("In the case *sub judice*, Plaintiff seeks injunctive and monetary relief from Defendants. Any injunctive relief, such as specific performance, would operate against the State and not the individual Defendants. Therefore, the Eleventh Amendment bars all injunctive relief sought by

Plaintiff – whether against the State or the individually named Defendants – as any injunction would be against the State."). Congress did not abrogate the states' Eleventh Amendment immunity by enacting Section 1983. *Champagne v. Jefferson Par. Sheriff's Office*, 188 F.3d 312, 314 (5th Cir. 1999). Moreover, Louisiana has not waived sovereign immunity. La. Rev. Stat. § 13:5106(A) (prohibiting suits against the State in any court other than a Louisiana state court); *Champagne*, 188 F.3d at 314.

State agencies that are considered arms of the State are entitled to Eleventh Amendment immunity from state law and Section 1983 lawsuits in federal court. *Richardson v. S. Univ.*, 118 F.3d 450, 452-53 (5th Cir. 1997). The LSP is considered an arm of the State entitled to Eleventh Amendment immunity. *Jones v. La. State Police*, No. CV 23-7258, 2023 WL 9284861, at *2 (E.D. La. Dec. 13, 2023), *report and recommendation adopted*, No. CV 23-7258, 2024 WL 167176 (E.D. La. Jan. 16, 2024), *aff'd*, No. 24-30093, 2024 WL 4346397 (5th Cir. Sept. 30, 2024); *Lavergne v. La. State Police*, No. Civ. A. 6:13-2189, 2014 WL 906285, at **3-4 (W.D. La. Mar. 7, 2014), *aff'd*, 583 F. App'x 363 (5th Cir. 2014); *Cupps v. La. State Police*, Civ. A. No. 12-0123, 2013 WL 2302688, *2 (M.D. La. May 24, 2013); *Waldrop v. Bethancourt*, Civ. A. No. 10-1962, 2010 WL 3312501, **2-3 (E.D. La. July 21, 2010); *Higginbotham v. Jones*, Civ. A. No. 09-2171, 2010 WL 1662475, *2 (W.D. La. Mar. 10, 2010); *Francis v. Terrebonne Par. Sheriff's Office*, Civ. A. No. 08-4972, 2009 WL 4730707, *3 (E.D. La. Dec. 9, 2009). Accordingly, Plaintiff's lawsuit against the LSP is barred by the Eleventh Amendment.

Plaintiff argues that no court has considered whether Article 926.3 waives sovereign immunity. But Plaintiff misconstrues his own claims. Plaintiff's claims do not arise under Articles 926.1 or 926.3. He has already received the relief he sought under those articles,

which provide only for the access and testing of evidence in the custody of the court, the state, or the investigating law enforcement agency. The state courts have already allowed Plaintiff access to and the testing of the bloody towel found under the passenger seat of Mayeaux's car. (Rec. doc. 3-2 at 9). Neither Article 926.1 nor Article 926.3 mentions the uploading of test results into CODIS or the state DNA database. Neither do they mention waiver of Eleventh Immunity in federal court either explicitly or implicitly. Plaintiff's argument does not vitiate the LSP's Eleventh Amendment immunity.

On a separate and independent basis to dismiss the LSP, this Court notes that state agencies such as the LSP are not "persons" subject to suit under 42 U.S.C. § 1983. *Hyatt v. Sewell*, 197 F. App'x 370 (5th Cir. 2006); *Cronen v. Tex. Dep't of Human Servs.*, 977 F.2d 934, 936 (5th Cir. 1992), *Waldrop*, 2010 WL 3312501, at *3 (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Francis*, 2009 WL 4730707, at *2; *Levy v. Office of Legislative Auditor*, 362 F. Supp. 2d 729, 735 (M.D. La. 2005); *Goins v. State of La.*, Civ. A. No. 04-1159, 2004 WL 2694899, *2 (E.D. La. Nov. 22, 2004). Plaintiff's lawsuit against the LSP is thus not even viable under Section 1983.

As a last resort, Plaintiff asks for leave to amend his Complaint in order to sue the state officials in their official capacities to invoke the *Ex Parte Young* exception to sovereign immunity. 209 U.S. 123 (1908). Such an amendment would, however, be futile. As Plaintiff acknowledges, *Ex Parte Young* applies only when there is, *inter alia*, an ongoing violation of federal law. *Planned Parenthood Gulf Coast, Inc. v. Phillips*, 24 F.4th 442, 451 (5th Cir. 2022). But Plaintiff has not identified an ongoing violation of federal law. Any claim by Plaintiff against a state official in his official capacity would be to force the state official to

perform a state function under state law.  Such a claim does not implicate federal law in any way.

IV.    **Conclusion**

For the foregoing reasons,

**IT IS ORDERED** that the Motion to Dismiss for Lack of Subject Matter Jurisdiction (rec. doc. 39) is **GRANTED**, and Plaintiff's claims against the Louisiana Department of Public Safety and Corrections, Public Safety Services, Office of State Police are **DISMISSED WITHOUT PREJUDICE**.

New Orleans, Louisiana, this ___24th___ day of _____February_____, 2025.

**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**